## STATE v PYLES

Ohio Appeals, 4th Dist, Lawrence Co
Decided Nov 14, 1930

Gilbert Bettman, Attorney General, Harry G. Levy, Toledo, and Lee D. Andrews, Ironton, for State.

Irish and Riley, Ironton, for Pyles.

**MAUCK, J.**

The basis of this prosecution is **1420 GC.** That section makes it unlawful to

"have in possession a pound net *** or any other device for catching fish, except a line with not more than three hooks attached thereto or lure with not more than three sets of hooks each in the inland fishing district of this state",

except as provided elsewhere in law.

The broad provisions of the section quoted are modified by **1419 GC** to this effect:

"Nothing in this act shall apply to nets *** not otherwise prohibited, to be used in catching fish in Lake Erie, or in the Ohio River, or in those bays, marshes, estuaries, inlets, bordering on, flowing into or in any manner connected with Lake Erie, wherein fishing with such devices is permitted when such fish nets *** are kept ** within one mile of the Ohio River."

This language is capable of the construction that the act does not apply to nets of any kind at any time in either Lake Erie or the Ohio River, and that the term "wherein fishing with such devices is permitted" modifies only the word bays and the nouns following. Color is loaned to this interpretation by the use of the disjunctive "or" where it first appears in the above quotation. Let us assume, however, as argued by the state, that the language permits and the history of the section requires us to say that the possession of nets to be used in Lake Erie and the Ohio River is only lawful "where fishing with such nets is permitted".

What is meant by permission? The position of the state is that fishing with nets is not permitted in the Ohio River because the laws of Kentucky penalize the use of unlicensed and untagged nets, and that Kentucky has the power to say what is permitted and what is not permitted on that stream. This position is unsound. Anything is permitted, so far as the criminal laws of Ohio are concerned, that has not been prohibited by some statute of this state. It appears to us that the mere statement of the state's position exposes its inherent weakness. An act innocent under the laws of Ohio, and committed within the exclusive jurisdiction of Ohio, can not be rendered criminal by virtue of the statute of another state. If the state's position were sound a curious system of jurisprudence would obtain in Lawrence County at the point opposite the mouth of the Big Sandy River, which is the boundary line between West Virginia and Kentucky. At a given point the possession of a net without a Kentucky tag would be criminal because the statutes of Kentucky would determine the character of that possession to be criminal. At another point a foot east thereof such possession would be entirely innocent because the jurisdiction of Kentucky would have to yield to that of West Virginia.

The right to regulate fishing on the waters of the Ohio has never been definitely determined. That the territory of Kentucky and West Virginia extends to low water mark on the Ohio side may be assumed. The Kentucky-Virginia compact of December 1, 1789, gave to Ohio and Kentucky concurrent jurisdiction on the river. Just what that jurisdiction is has never been determined. That Kentucky and West Vir-

ginia may regulate fishing and punish violators of their laws in that behalf up to the low water mark on the upper side of the river has been determined. **Nicoulin v. O'Brien, 248 U. S. 113.** Whether by virtue of the compact referred to those states may in the exercise of their concurrent jurisdiction legislate concerning fishing on the waters above the low water mark on the Ohio side, and whether Ohio has by virtue of that compact a corresponding and concurrent right to regulate fishing below the low water mark on the Ohio side, is by the same token undetermined but the probable answer is in the negative. **Nielsen v. Oregon, 212 U. S. 315; Miller v. McLaughlin, 281 U. S. 261.** If Kentucky has jurisdiction to regulate fishing on the Ohio above low water mark its penal laws in that behalf would of necessity be enforced in its own courts only. **8 R. C. L. 102.**

In **Miller v. McLaughlin,** supra, the Supreme Court of the United States was dealing with the concurrent jurisdiction of Nebraska and Iowa over the Missouri River. Miller, a resident of Nebraska, undertook to enjoin the enforcement of the Nebraska statute, which denounces the possession of nets except as authorized by certain officers of that state. He claimed that while he possessed nets he planned to use them on the Iowa side only, and further claimed that the concurrent jurisdiction of the two states required concurrent legislation to prohibit fishing on that srteam. The court denied his claim. It said:

"While the two states have not concurred in this legislation there is no conflict between them. Each has legislated only as to that part of the river which is within its own territorial limits."

The situation is plain and simple in this respect at least. The laws of Ohio do not undertake to regulate or prohibit the use of nets in the Ohio River. This state's jurisdiction at least above low water mark is unchallenged, and as long as this state does not prohibit or regulate fishing by nets the possession of such nets is not prohibited so far as the criminal law of this state is concerned and their possession is permitted.

In reversing the judgment of the Justice of the Peace the Common Pleas Court was right and the judgment of that court is affirmed.

Middleton, PJ, and Blosser, J, concur.